

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
901 RICHLAND STREET
COLUMBIA, SOUTH CAROLINA 29201

JOSEPH F. ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

TELEPHONE (803) 765-5136

August 9, 2011

TO:   All Counsel of Record

RE:   Leventis v. Safeco Insurance Co. of America, et al., C/A No. 3:09-1561-JFA

Dear Counsel:

I would like to invite further briefing on the class certification motion that is now pending before me and would like, by way of this letter, to explain my concerns.

It appears to me that the class certification question may turn largely on the distinction between an "assignment" of an insurance contract and an "authorization to pay." At the hearing last week, Henry Parr did a good job of pointing out how many of the files in this case use these two terms interchangeably or inconsistently. The statute itself (S.C. Code Ann. § 36-77-144) expressly prohibits "assignment," but as we have seen, many people use the word assignment when they mean "authorization to pay." If, for the purposes of this case, the two terms are to be used interchangeably, the defense argument that enormous amounts of time will be expended to determine whether an assignment was, in fact, made melts away.

It may be that the drafters of the legislation used the word "assignment" when they meant to use the words "authorization to pay" or something similar. In other words, do I have authority to construe the word "assignment" to mean something broader than its technical definition; or am I bound by the strict language of the statute?

To answer this question it might be helpful to explore why the legislature saw fit to prohibit an assignment which, if I understand the concept correctly, would almost never occur for a policy regarding medical payments.

You might recall that I mentioned in the hearing that I wrote a law review article when I was in law school on the newly-enacted "no fault" legislation that is the forerunner of the statute we are now construing. To take a quick trip down memory lane, the original legislation, passed in 1974, was part of the national "no fault" movement designed to reduce or eliminate entirely transaction costs associated with auto torts claims. The national no fault

movement generally involved a situation requiring first party insurance benefits with a total bar on tort claims against the other motorist. The South Carolina version, which was a much watered down version, required mandatory personal injury protection ("PIP") coverage, but instead of a bar on litigation, it contained a setoff provision that simply required the injured motorist to reduce his damage award from the at fault motorist by the amount that he had recovered in PIP benefits. Then, for some reason, the drafters of the legislation included the prohibition on assignment and subrogation.

Of course, the legislation has been modified substantially since 1984; the PIP benefit is no longer mandatory and there is no setoff. But, the bar on assignment and subrogation contained in the original statute remains. I am taking the liberty of enclosing herewith the law review article that I mentioned for what it is worth, in the hopes that it might provide a starting point for research on why the "no assignment" language made its way into the statute. I direct your attention to pages 715 through 723.

I am not nearly as concerned with the number of files involved as I am with this precise legal question. Often times, when faced with a close call on class certification, the better course of action is to allow the class action device to go forward, knowing that I can de-certify the class at any time in the proceedings if it becomes apparent that certification was not called for. Here, however, we are going to have to reach this question sooner or later and it seems to me that now is the time to do it.

I know this letter is somewhat rambling, but I just wanted to set my thoughts out on paper. My specific question is:

> Did the legislature mean for the word "assignment" to be used as that term is technically defined in the law, or in some looser sense, to include an authorization to pay?

I think that although we do not have much legislative history in South Carolina, a close examination of the reasons the "no assignment" language was included in the original no fault bill might shed some light on the debate.

Rather than having a brief, a response, and a reply, I would like to suggest that the briefing be simultaneous, with the briefs due on or before September 8, 2011.

With warmest personal regards, I remain

Sincerely yours,

Joseph F. Anderson, Jr.

JFAjr:gh
Enclosure